UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00479-GNS

AIMEE TRUPP; and DANIEL TRUPP            PLAINTIFFS

v.

BANK OF AMERICA, N.A.; and
LERNER SAMPSON & ROTHFUSS CORPORATION     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Lerner Sampson & Rothfuss Corporation's Motion to Dismiss (DN 13). The motion is ripe for adjudication. For the reasons that follow, Defendant's motion is **GRANTED**.

### I. BACKGROUND

On or about September 21, 2005, Plaintiffs purchased a home, financed in part via a mortgage loan from the predecessor of Defendant Bank of America, N.A. ("BOA"). (Compl. ¶¶ 7, 9, DN 1). While Plaintiff Daniel Trupp ("Daniel") applied for and received the mortgage loan and signed a promissory note, his wife, Plaintiff Aimee Trupp ("Aimee"), signed neither the loan application nor the promissory note. (Compl ¶ 7). Aimee did, however, sign the mortgage. (Pls.' Resp. Def.'s Mot. Dismiss 3, DN 21).

On or about May 2, 2018, Aimee filed an individual petition for bankruptcy relief under Chapter 13. (Compl. ¶ 11). In her petition, Aimee listed the residence on her Schedule A/B,[1]

---

[1] Schedule A/B to Official Form 106A/B requires the debtor to list any ownership interest in real property. (Def.'s Mot. Dismiss Ex. B, at 19, DN 13-2); *see* 18 Lawrence P. King, *Collier on Bankruptcy* ¶ CS10.41[1][D][ii] (16th ed. 2019) ("*Official Form 106A/B,* Schedule A/B: Property, consolidates information about an individual debtor's real and personal property into a single form." (emphasis in original)).

1

noting that the residence was subject to a mortgage held by BOA in the name of her non-filing spouse, Daniel. (Compl. ¶ 11). At the time of her bankruptcy filing, Aimee did not owe money to BOA which was not listed as a creditor in her bankruptcy filings. (Compl. ¶ 12). On May 25, 2018, BOA, through its law firm, Defendant Lerner Sampson Rothfuss Corporation ("LSR"), objected to Aimee's Chapter 13 bankruptcy plan. (Def.'s Mot. Dismiss Ex. D, at 1-2, DN 13-4); *see* 8 King, *supra*, ¶ 1324.03 ("[11 U.S.C.] Section 1324(a) expressly authorizes any party in interest, including any secured or unsecured creditor, to object to the confirmation of a chapter 13 plan.") (citations omitted). The objection stated that Aimee and Daniel executed a mortgage, indicated the amount of the promissory note, noted that the "mortgage loan account is in default, resulting in an estimated pre-petition arrearage of $1,070.35[,]" and attached the promissory note and mortgage. (Def.'s Mot. Dismiss Ex. D, at 1-2, 4, 8).

On or about June 29, 2018, LSR filed a Proof of Claim on behalf of BOA in the amount of $102,775.41 against Aimee in her bankruptcy proceeding. (Compl. ¶ 15; Def.'s Mot. Dismiss Ex. F, at 1-2, DN 13-6); *see* 4 King, *supra*, ¶ 501.01[1] ("The rationale for requiring the filing of a formal proof of claim or interest in accordance with [11 U.S.C.] section 501 is to ensure that 'all those involved in the proceeding will be made aware of the claims against the debtor's estate.'") (citations omitted)). The Proof of Claim stated the payment on the debt was in arrears by $1,088.39, which Plaintiffs assert was false, and gave other details about the promissory note and mortgage. (Compl. ¶ 16; Def.'s Mot. Dismiss Ex. F, at 2, 13, 17).

In response to LSR's bankruptcy filings, Plaintiffs brought this action against LSR on July 1, 2019.[2] (Compl. 1). Daniel asserts claims of invasion of privacy and defamation, while Daniel

---

[2] Plaintiffs also assert claims against BOA that are not the subject of LSR's motion to dismiss. (Compl. ¶¶ 24-64).

and Aimee both assert various claims stemming from violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (Compl. ¶¶ 30-39, 44-64). LSR has since moved, under Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' claims against it. (Def.'s Mot. Dismiss 1, DN 13).

## II.　JURISDICTION

Jurisdiction in this action is based on federal question and supplemental jurisdiction. Plaintiffs assert claims under federal law, specifically, the FDCPA. *See* 28 U.S.C. § 1331; (Compl. ¶¶ 1, 6, 44-64). Supplemental jurisdiction affords jurisdiction over Daniel's invasion of privacy and defamation state law claims. *See* 28 U.S.C. § 1367(a); (Compl. ¶¶ 30-39).

## III.　STANDARD OF REVIEW

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a defendant's motion to dismiss, the Court will "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

## IV.     DISCUSSION

According to Plaintiffs, their claims against LSR "arise from one, solitary illegal act: the filing of a 'proof of claim' in Aimee Trupp's bankruptcy case on behalf of its client, defendant Bank of America, N.A. on June 29, 2018." (Pls.' Resp. Def.'s Mot. Dismiss 2).  Generally, when both federal and state law claims are before a federal court, the court is to apply federal law to the plaintiff's federal law claims and state substantive law to the plaintiff's state law claims. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 737, 741 (6th Cir. 1999) (citations omitted).  It is undisputed that Kentucky law applies to Plaintiffs' state law claims. (Def.'s Mot. Dismiss 6; Pls.' Resp. Def.'s Mot. Dismiss 6).

As an initial matter, the parties dispute whether this Court can consider certain evidence LSR points to in support of its arguments.  Specifically, LSR points to court filings and exhibits in Aimee's bankruptcy court case; Plaintiffs argue that LSR's use of materials outside the pleadings should transform LSR's motion to dismiss into a prematurely-filed motion for summary judgment.  (Def.'s Mot. Dismiss 2; Pls.' Resp. Def.'s Mot. Dismiss 7); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)[,] . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). LSR is correct that the Court may consider court filings and exhibits in Aimee's bankruptcy case without transforming LSR's 12(b)(6) motion into summary judgment motion.  "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, [and] items appearing in the record of the case . . . also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)) (internal quotation marks omitted) (emphasis omitted).  The Sixth Circuit "ha[s] recognized that if a plaintiff

4

references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citation omitted). "Such public records that a court may consider include documents from other court proceedings." *Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425-26 (6th Cir. 2018) (citing *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)). "'A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.' This includes judicial opinions and court filings in other cases." *Tippins v. NWI-1, Inc.*, No. 1:16-CV-10140-TLL-PTM, 2016 WL 8232836, at *2 (E.D. Mich. June 17, 2016) (quoting *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)) (citation omitted); *see also In re Gainey Corp.*, 481 B.R. 264, 2012 WL 3938521, at *13 (B.A.P. 6th Cir. 2012) ("'[C]ourt filings and docket entries' are considered matters of public record which may be consulted in deciding a Rule 12(b)(6) motion." (citations omitted)). The filings and the court records from Aimee's bankruptcy case can therefore be properly considered.

As further justification for the consideration of the documents filed in Aimee's bankruptcy case, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Amini*, 259 F.3d at 502 (internal quotation marks omitted) (citations omitted). Additionally, "if extrinsic materials merely 'fill in the contours and details' of a complaint, they add nothing new and may be considered without converting the motion to one for summary judgment." *Armengau v. Cline*,

5

7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)). In the Complaint, Plaintiffs reference Aimee's Chapter 13 bankruptcy Petition, Aimee's Schedule A/B form, the mortgage loan on the residence, the promissory note secured by the residence, and BOA's Proof of Claim. (Compl. ¶¶ 7-8, 11-12, 15-17). Defendant's inclusion of these records for consideration on its 12(b)(6) motion to dismiss is therefore proper because Plaintiffs referenced them and they are central to her claims—as discussed below, the information in these documents form the factual predicates for all of Plaintiffs' claims. Defendant's inclusion of its Objection in Aimee's bankruptcy case is also proper because it reflects how BOA and LSR first became involved in Aimee's bankruptcy case.

In sum, consideration of court filings in Aimee's bankruptcy case is proper in adjudicating LSR's motion to dismiss.

### A. **Invasion of Privacy and Defamation**[3]

As the basis for his invasion of privacy claim, Daniel asserts that LSR "divulged [his] privacy [sic] loan information in the proof of claim and attachments [LSR] filed in Aimee Trupp's Bankruptcy case." (Compl. ¶ 31). As the basis for his defamation claim, Daniel asserts that LSR "published false and derogatory information about [him] in the proof of claim and attachments . . . to wit, that Mr. Trupp defaulted or was otherwise in arrears on his loan payments, which was false." (Compl. ¶ 36). Daniel's invasion of privacy and defamation claims, therefore, stem from statements made in the proof of claim filed by LSR on behalf of BOA.

"Kentucky law has long provided that 'statements in pleadings filed in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry.'" *In re Lowenbraun*, 453 F.3d 314, 322 (6th Cir. 2006) (citations omitted). Daniel's only

---

[3] Only Daniel, not Aimee, asserts these claims against LSR. (Compl. ¶¶ 30-39).

6

argument that the "judicial statements privilege" does not apply here to preclude him from sustaining a cause of action for invasion of privacy and defamation is that "LSR's proof of claim was not material, pertinent, or relevant to Ms. Aimee's bankruptcy case." (Pls.' Resp. Def.'s Mot. Dismiss 6); *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. App. 2014). However, "[a] fair reading of § 102(2) [of the Bankruptcy Code] is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a 'claim against the debtor' for purposes of the Code." *Johnson v. Home State Bank*, 501 U.S. 78, 87 (1991). In *Johnson*, "[t]he Supreme Court stated that 'claims' that may be addressed in a Chapter 13 plan include rights enforceable only against property of the debtor, 'regardless of how those interests come into existence.'" *In re Schor*, No. 04-53166, 2004 Bankr. LEXIS 1786, at *8 (Bankr. E.D. Ky. Nov. 19, 2004) (quoting *Johnson*, 501 U.S. at 87).

Plaintiffs admit in their Complaint that "Ms. Trupp listed the [residence] on Schedule A/B, which was annexed to [her Chapter 13 bankruptcy] petition, noting that the [residence] is subject to a mortgage held by Bank of America in her non-filing spouse's name . . . ." (Compl. ¶ 11). Because Aimee listed the residence in her Schedule A/B in her Chapter 13 bankruptcy petition and because BOA was a mortgagee of that property, per *Schor* and *Johnson*, LSR's proof of claim was addressable in Aimee's bankruptcy case. This negates any argument that the proof of claim was immaterial, impertinent, or irrelevant to Aimee's bankruptcy case. As such, LSR is correct that Daniel cannot maintain an invasion of privacy or defamation claim against it for statements LSR made in the Proof of Claim it filed on behalf of BOA in Aimee's bankruptcy case. *See Lowenbraun*, 453 F.3d at 323 (party "immune from liability" stemming from party's "judicial . . . statements").

7

Daniel's invasion of privacy claim is likewise predicated on the information LSR divulged in Aimee's bankruptcy case. The Kentucky Court of Appeals in *Halle* made clear that the judicial statements privilege "precludes the use of those privileged communications to sustain a cause of action." *Halle*, 453 S.W.3d at 184. While the Court in *Halle* held that "the privilege is . . . applicable to communications[,]" the Court declined to extend the privilege "where it is alleged the *conduct* of the tortfeasor serves as the basis for the claim[,]" for example, to abuse of process claims. *Id*. at 185 (emphasis added). Even so, the Court in *Halle* extended the privilege to "interference with business relations and fraud in the inducement [claims] to the extent the claims rely on communications made preliminary to, or in the institution of, or during the course of a judicial proceeding." *Id*. at 189.

Daniel's invasion of privacy claim here is predicated on statements made by LSR about Daniel's finances, not its conduct in Aimee's bankruptcy case: "LSR[] divulged Plaintiff Daniel Trupp's privacy [sic] loan information in the proof of claim and attachments they filed in Aimee Trupp's Bankruptcy case." (Compl. ¶ 31). Although the Court cannot find a Kentucky case applying the judicial statements privilege to an invasion of privacy claim, the application of the privilege to such a claim is supported by Kentucky law, namely, that the privilege applies to preclude the use of statements made in court proceedings to sustain a cause of action. *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 888-89 (Ky. 1981) (recognizing that defamation and invasion of privacy claims are "closely allied.").[4]

---

[4] LSR additionally argues that Daniel's invasion of privacy and defamation claims are barred by a one-year statute of limitations. (Def.'s Mot. Dismiss 6-8). *See Lee v. Stanley*, No. 2015-CA-001264-MR, 2017 WL 465319, at *4 (Ky. App. Feb. 3, 2017) ("The statute of limitations for a defamation claim is one year." (citation omitted)); *Branham v. Micro Comput. Analysts*, 350 F. App'x 35, 37-39 (6th Cir. 2009) (invasion of privacy claim subject to one-year statute of limitations if based on same conduct as defamation claim). LSR's contention on this point, which Plaintiffs do not dispute, is that the statute of limitations on Daniel's defamation and invasion of

8

The judicial statements privilege operates to prevent Daniel from maintaining invasion of privacy and defamation claims based on information LSR provided about Daniel in Aimee's bankruptcy case. Additionally, the statute of limitations operates to bar Daniel from asserting his defamation claim, and Daniel does not refute the operation of the statute of limitations to his invasion of privacy claim. For these reasons, Daniel's invasion of privacy and defamation claims will be dismissed with prejudice. *See Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Ga.*, No. 15-161-DLB-HAI, 2017 WL 3122661, at *15-17, *20 (E.D. Ky. July 21, 2017) (dismissing with prejudice claims to which judicial statements privilege applied); 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4441 n.1 (rev. 4th ed. Dec. 13, 2019 update) ("A dismissal on [statute of] limitations grounds is a judgment on the merits." (citing *Wheeler v. Dayton Police Dept.*, 807 F.3d 764 (6th Cir. 2015))).

---

privacy claims actually began running on May 25, 2018, when BOA's Objection was filed because the Objection contains essentially the same information giving rise to those two claims. Daniel's argument is well taken. (Def.'s Mot. Dismiss 7; Compl. ¶¶ 31, 36; Def.'s Mot. Dismiss Ex. D, at 1-2; Def.'s Mot. Dismiss Ex. F, at 1-2). "The statute [of limitations] begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." *Hackworth v. Hart*, 474 S.W.2d 377, 379 (Ky. 1971). Daniel should have discovered BOA's Objection and Aimee's response to it, especially considering that Plaintiffs admit that "on . . . May 18, 2018 and June 15, 2018, BOA assessed fees of $325 and $500, respectively, to Mr. Trupp's loan account *relating to his wife Ms. Trupp's bankruptcy filing* and blocked Mr. Trupp from online access to his loan account." (Def.'s Mot. Dismiss Ex. E, at 1-3, DN 13-5; Compl. ¶¶ 7, 20 (emphasis added)). Although Daniel points out that even small, immaterial disclosures relating to an earlier disclosure but which were not actually disclosed previously may give rise to a separate and distinct claim of invasion of privacy, he makes no attempt to address why any differences between the Objection and Proof of Claim would give rise to a separate and distinct claim of invasion of privacy that began running on June 29 instead of May 25.

B. **FDCPA Violations**

Next, Plaintiffs assert violations of the FDCPA under 15 U.S.C. §§ 1692d, 1692e, and 1692f.[5] LSR contends that Plaintiffs' FDCPA claims are barred by the statute of limitations and otherwise fail on the merits. LSR repeats the statute of limitations argument it made regarding Plaintiffs' defamation and invasion of privacy claims—the statute of limitations on Plaintiffs' FDCPA claims actually began to run on May 25, 2018, with the filing of LSR's Objection in Aimee's bankruptcy case, so Plaintiffs' FDCPA claims were not timely filed. (Def.'s Mot. Dismiss 8).

Claims under the FDCPA are subject to a one-year statute of limitations. 15 U.S.C. § 1692k(d); *Rotkiske v. Klemm*, 140 S. Ct. 355, 359 (2019). The U.S. Supreme Court has recently held "that, absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske*, 140 S. Ct. at 358.

LSR's position that the statute of limitations began to run on May 25, 2018, is well taken. Plaintiffs' FDCPA claims are based on LSR's representation of BOA in Aimee's bankruptcy case, specifically, "[i]n the proof of claim and related filings." (Compl. ¶¶ 44-45, 50, 56). LSR's assertion that the statute of limitations should begin running when it filed BOA's Objection on May 25, 2018, is supported by the Sixth Circuit's decision in *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 F. App'x 268 (6th Cir. 2016). In a factual setting nearly identical to the present case, Smith made essentially the same arguments Plaintiffs make here: (1) the statute of limitations period on his FDCPA claims did not begin to run until BOA filed its Objection on January 6, 2014,

---

[5] Plaintiffs originally claimed additional violations of Section 1692g but have since withdrawn their claims based on violations of that provision. (Pls.' Resp. Def.'s Mot. Dismiss 10).

so his October 15, 2014, complaint was timely; and (2) even if the statute of limitations began when BOA filed its foreclosure action in January 2010, the continuing violations rule applied to allow Smith's FDCPA to be considered timely. *Id.* at 273; (Pls.' Resp. Def.'s Mot. Dismiss 5-6). The Court in *Smith* rejected both arguments:

> Civil actions under the Fair Debt Collection Practices Act may be brought "within one year from the date on which the violation occurs." Generally, "when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date." Under the rule of *Slorp*, the statute of limitations began running on January 19, 2010: the date when Bank of America filed the state-court action seeking to foreclose on the mortgage. The FDCPA claim accrued when Bank of America initiated the foreclosure action on a mortgage that Smith claims it did not actually own. Smith's claim is therefore well outside the one-year limitations period; it was not filed until October 15, 2014, over four and a half years after the "otherwise unfair lawsuit" was brought.
>
> Smith counters that the filing date of the state-court action did not start the clock on his FDCPA claim. He argues that many of the actions that make up his claim, including the allegedly fraudulent assignment and Bank of America's subsequent objection at his bankruptcy proceeding, occurred *after* the filing of the state-court action. This argument is not well taken. The assignment was created on the same day that the state-court action was filed, on January 19, 2010. And Bank of America did not violate the FDCPA anew merely by asserting its interest in the mortgage throughout the state-court action. In *Slorp*, a factually similar case involving the same law firm, this court held that the "defendants did not commit a fresh violation of the FDCPA each time they filed pleadings or memoranda reaffirming the legitimacy of their state-court suit rather, those were the continuing effects of their initial violation." Because the assignment formed the basis of the *Slorp* plaintiff's FDCPA claim, the *Slorp* court held that the defendants did not commit independent violations of the FDCPA simply by prosecuting their lawsuit.
>
> Smith also argues that his claim is timely based on Bank of America's January 6, 2014 objection in bankruptcy court to the confirmation of Smith's bankruptcy plan. If this objection constitutes a separate violation of the FDCPA, it occurred less than a year from his filing of the FDCPA claim on October 15, 2014. There is persuasive authority for the proposition that filing a proof of claim in bankruptcy court cannot form the basis of an FDCPA action. We need not rely on this authority, however, because Bank of America's proof of claim in the bankruptcy action did not constitute a new FDCPA violation. The filing was, as in *Slorp*, simply an action that gave "continuing effect" to Bank of America's initial assertion that it had an interest in the mortgage, an interest first recognized in the state court. Bank of

America's filing in the bankruptcy court, therefore did not reset the statute of limitations.

*Id*. at 273 (emphasis in original) (citations omitted).

Like in *Smith*, Plaintiffs' FDCPA claims are measured from the date LSR filed BOA's Objection on May 25, 2018, i.e., the first time BOA asserted its rights in Aimee's bankruptcy case which was materially the same information relayed in the Proof of Claim. *See* 8 King, *supra*, ¶ 1324.03 ("The right to object to confirmation of the plan is usually a creditor's only opportunity to contest the debtor's treatment and possible discharge of the creditor's claim in chapter 13 . . . .") (citations omitted); *see also Goodwyn v. Capital One, N.A.*, 127 F. Supp. 3d 1367, 1373 (M.D. Ga. 2015) (holding that a creditor's filing of a proof of claim but not a formal objection constitutes a creditor's acceptance of a Chapter 13 reorganization plan) (citing *In re Castleberry*, 437 B.R. 705, 708-09 (Bankr. M.D. Ga. 2010)); (Def.'s Mot. Dismiss Ex. D, at 1, 4-28; Def.'s Mot. Dismiss Ex. F, at 2, 13-37). Also like in *Smith*, LSR's filing of its Proof of Claim is not a new FDCPA violation; rather, it is simply a continuing effect of LSR's initial assertion through its Objection that BOA had a claim pertaining to Aimee's bankruptcy case. Nor do any of LSR's other filings in Aimee's bankruptcy case constitute new FDCPA violations—those filings were simply continuing effects of LSR's initial Objection. As such, all of Plaintiffs' claims based on violations of the FDCPA fail.

Alternate reasons exist to dismiss Plaintiffs' FDCPA claims, as well. In the words of Plaintiffs, "[t]he Trupps' claims against the defendant LSR arise from one, solitary illegal act: the filing of a 'proof of claim' in Aimee Trupp's bankruptcy case on behalf of its client, defendant Bank of America, N.A. on June 29, 2018." (Pls.' Resp. Def.'s Mot. Dismiss 2). To that end, the Sixth Circuit stated in *Smith*, albeit in dicta, that "[t]here is persuasive authority for the proposition that filing a proof of claim in bankruptcy court cannot form the basis of an FDCPA action." *Smith*,

12

658 F. App'x at 273 (citing *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010)). "Federal courts have consistently ruled that filing a proof of claim in bankruptcy court (even one that is somehow invalid) cannot constitute the sort of abusive debt collection practice proscribed by the FDCPA, and that such a filing therefore cannot serve as the basis for an FDCPA action." *Simmons*, 622 F.3d at 95-96 (citations omitted). Plaintiffs' allegations of FDCPA violations stemming from LSR's filing of a proof of claim in Aimee's bankruptcy case fail for this additional reason as well.

Finally, specifically pertaining to 15 U.S.C. § 1692d, that statute states that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." As the Sixth Circuit articulated in *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006):

> Although nonexhaustive, the examples of oppressive conduct listed in § 1692d concern tactics intended to embarrass, upset, or frighten a debtor. They are likely to cause the "'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have." These tactics are not comparable to the single filing of a debt-collection lawsuit.
>
> . . .
>
> Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor. *Any* attempt to collect a defaulted debt will be unwanted by a debtor, but employing the court system in the way alleged by [the plaintiff] cannot be said to be an abusive tactic under the FDCPA.

*Id*. at 330-31 (emphasis in original) (citations omitted). If the filing of a debt-collection lawsuit without the immediate means of proving the debt does not constitute a Section 1692d violation, then the filing of a proof of claim in a bankruptcy case cannot either.

Plaintiffs have failed to assert FDCPA violations within the statute of limitations and that would otherwise survive on the merits. As such, Plaintiffs' claims based on FDCPA violations

will be dismissed with prejudice. *See Smith v. Nationstar Mortg.*, 756 F. App'x 532, 534-37 (6th Cir. 2018) (affirming district court's dismissal with prejudice of plaintiff's FDCPA claims based on applicability of the statute of limitations and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)).

V.     **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Lerner Sampson & Rothfuss Corporation's Motion to Dismiss (DN 13) is **GRANTED**. All of Plaintiffs' claims against Defendant Lerner Sampson & Rothfuss Corporation are **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

April 9, 2020

cc:     counsel of record